SCOTT J. SAGARIA (BAR # 217981)
ELLIOT W. GALE (BAR #263326)
JOE B. ANGELO (BAR #268542)
SCOTT M. JOHNSON (BAR #287182)
**SAGARIA LAW, P.C.**
3017 Douglas Blvd., Ste. 100
Roseville, CA 95661
408-279-2288 ph
408-279-2299 fax

Attorneys for Plaintiff
Michelle Amos

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| **MICHELLE AMOS,**<br><br>                    Plaintiff,<br><br>        v.<br><br>Experian Information Solutions, Inc.;<br>Equifax, Inc.; Universal Acceptance<br>Corporation, Verizon Wireless Services,<br>Credit One Bank, N.A., and DOES 1<br>through 100 inclusive**,**<br>                    Defendants. | CASE NO.<br><br><br>COMPLAINT FOR DAMAGES:<br><br>  1.  Violation of Fair Credit Reporting Act;<br>  2.  Violation of California Consumer Credit<br>       Reporting Agencies Act |

COMES NOW Plaintiff **MICHELLE AMOS**, an individual, based on information and belief, to

allege as follows:

## **INTRODUCTION**

1.  This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C.

    § 1681e(b)), 15 USC 1681i-(a), 15 U.S.C. § 1681i(a)(2)(A(1) and the California

    Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a). Plaintiff

    seeks redress for the unlawful and deceptive practices committed by the Defendants in

connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included and discharged in Plaintiff's Chapter 7 bankruptcy.

2. Defendant Universal Acceptance's tradeline is reporting Plaintiff's account as being charged off and in collections instead of discharged in bankruptcy.

3. Defendant Verizon Wireless' tradeline is reporting Plaintiff's account as being charged off and in collection with a balance and past due balance owed instead of discharged in bankruptcy.

4. Defendant Credit One's tradeline is reporting Plaintiff's account as being charged off and in collections instead of discharged in bankruptcy.

5. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

6. There exists today in the United States a pervasive and fundamental misunderstanding about the long term impact filing a consumer bankruptcy has on a consumer's credit worthiness. Specifically, many consumers believe that because a bankruptcy can be reported on their credit report for ten years their credit worthiness will be ruined for the same length of time. This is not true.

7. The *majority* of consumer Debtors who file consumer bankruptcy do so to *raise* their FICO Score and remedy their poor credit worthiness.

8. It is entirely possible for consumer Debtors to have over a 700 FICO Score within as little as 12 months after filing a consumer bankruptcy (Chapter 7 or Chapter 13).

9. Creditors and lending institutions are aware of the misconception that filing a consumer bankruptcy destroys a consumer's credit worthiness for ten years.

10. In an effort to perpetuate the aforementioned bankruptcy myth, creditors intentionally and routinely ignore credit reporting industry standards for accurately reporting bankruptcies and debts included in those bankruptcies in an effort to keep consumers' credit scores low and their interest rates high.

11. Creditors know that by deviating from recognized credit reporting standards consumers will have difficulty raising their credit scores and improving their credit worthiness.

12. This was not the intent of Congress when enacting the Fair Credit Reporting Act and the Bankruptcy Abuse Prevention and Consumer Protection Act.

## JURISDICTION & VENUE

13. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

14. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

15. This venue is proper pursuant to 28 U.S.C. §1391(b).

## GENERAL ALLEGATIONS

16. Plaintiff alleges that Universal Acceptance, Verizon, and Credit One were all included in Plaintiff's Chapter 7 bankruptcy filing.

17. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

18. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendants reported in accordance with the recognized industry standard.

19. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's fresh start via a Chapter 7 discharge.

20. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

21. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

22. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

23. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

24. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

25. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

26. There are 28 FICO Scores that are commonly used by lenders.

27. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

28. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

29. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

30. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

31. Each of the five factors is weighted differently by FICO.

32. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

33. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

34. In factoring the severity of delinquent payments a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

35. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

36. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

37. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

38. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

39. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

40. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

41. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

42. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

    a.   The CDIA offers a FCRA certificate program for all CRAs.

    b.   The CDIA offers a FCRA awareness program for all CRAs.

    c.   The CDIA offers a FCRA Certificate program for DFs.

    d.   The CDIA offers a FCRA awareness program for DFs.

e.  The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

f.  The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

g.  The CDIA developed a credit reporting resource guide for accurately reporting credit.

43. The CDIA's Metro 2 is accepted by all CRAs.

44. The credit reporting accepted industry standards for reporting metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

45. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

46. The credit bureaus helped write the CRRG

47. The CRRG is not readily available to the public. It can be purchased online for $229.45.

48. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

49. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

50. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

51. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

**e-OSCAR**

52. E-OSCAR is the web based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes

53. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

54. The ACDV contains within it Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account)

**Bankruptcy Credit Reporting Industry Standards Post Discharge**

55. When a consumer files bankruptcy certain credit reporting industry standards exist.

56. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

57. Post discharge all derogatory reporting should cease in the payment history.

58. No credit reporting should occur in the payment history post discharge.

59. The consumer information indicator should be updated to reflect an E or discharged Chapter 7. This alerts all potential lenders this debt is no longer personally owed or collectable against the consumer irrespective of whether the account has been sold, transferred, or otherwise sent to collections.

**Plaintiffs Bankruptcy Filing**

60. Plaintiff filed for Chapter 7 bankruptcy protection on April 8, 2016 in order to reorganize and repair Plaintiff's credit worthiness and FICO Score.

61. Post filing, Defendants would not accept payments directly from Plaintiff.

62. Post filing, Defendants were not anticipating receiving payments directly from Plaintiff.

63. Plaintiff's plan was discharged on August 9, 2016.

64. On January 4, 2017 Plaintiff ordered a credit report from Equifax, Inc. to ensure proper reporting by Plaintiff's Creditors.

65. Plaintiff noticed one Universal Acceptance Corporation trade line on the January 4, 207 credit report that was reporting inaccurate, misleading, and incomplete information that did not comply with credit reporting industry standards.

66. Defendant Universal was reporting Plaintiff's account's status, post-discharge, as in collections and charged off.

67. Defendant Universal was listed as a creditor in Plaintiff's initial bankruptcy filing and received notice of the filing from the Bankruptcy Notification Center.

68. Plaintiff noticed one Verizon trade line on the January 4, 207 credit report that was reporting inaccurate, misleading, and incomplete information that did not comply with credit reporting industry standards.

69. Defendant Verizon was reporting Plaintiff's account's status, post-discharge, as in collections and charged off.

70. Defendant Verizon was listed as a creditor in Plaintiff's initial bankruptcy filing and received notice of the filing from the Bankruptcy Notification Center.

71. Plaintiff noticed the Credit One trade line on the January 4, 207 credit report that was reporting inaccurate, misleading, and incomplete information that did not comply with credit reporting industry standards.

72. Defendant Credit One was reporting Plaintiff's account's status, post-discharge, as in collections and charged off.

73. Defendant Credit One was listed as a creditor in Plaintiff's initial bankruptcy filing and received notice of the filing from the Bankruptcy Notification Center.

74. In response, Plaintiff disputed the inaccurate Universal, Verizon, and Credit One trade lines via certified mail with Experian Information Solutions, Inc.; Equifax, Inc.; and TransUnion, LLC on March 28, 2017.

75. Plaintiff's dispute letter specifically put Universal, Verizon, and Credit One on notice that Plaintiff had filed for bankruptcy the account should not be reported Charged off and Plaintiff was not late.

76. Plaintiff specifically identified that the dispute was post-bankruptcy discharge.

77. Plaintiff requested that Universal, Verizon, and Credit One refer to the CDIA guidelines for the proper way to report Plaintiff's bankruptcy, post discharge.

78. Plaintiff requested for any derogatory reporting to be updated.

79. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to Universal, Verizon, and Credit One via an ACDV through e-OSCAR.

80. On May 16, 2017 Plaintiff ordered a second three bureau credit report from Equifax, Inc. to ensure Plaintiff's accounts had been updated.

**Inaccuracy**

81. Defendant Universal Acceptance Corp was reporting Plaintiff's account, beginning in 26xxxx, inaccurately.

82. Defendant reported a charge off and indicated the account was in collections.

83. Defendant Universal's reporting does not report that the account was included or discharged in Plaintiff's chapter 7 bankruptcy.

84. Defendant Universal's charge off reporting continued after Plaintiff received his chapter 7 discharge.

85. Plaintiff's account with Universal even if charged off should have reflected the discharge.

86. Defendant reporting a charge off is not complete given Plaintiff's bankruptcy discharge.

87. Plaintiff alleges that Defendant Universal did not investigate whether Plaintiff filed for bankruptcy or whether Plaintiff's account was included in the bankruptcy.

88. The Credit Reporting Agencies provided notice to Defendant Universal that Plaintiff was disputing the inaccurate and misleading information, but Defendant Universal failed to conduct a reasonable investigation of the information, as required by the Fair Credit Reporting Act.

89. Defendant Universal's reporting appears to undermine Plaintiff's bankruptcy discharge as Universal has taken the approach that it is ok to continue reporting the account as in collections and charged off, post discharge.

90. Thus, Defendant Universal is not reporting the CII "E."

91. Based on Plaintiff's dispute, Defendant Universal should have known that its account was included in Plaintiff's bankruptcy given that it arose prepetition.

92. The most basic investigation would include a simple review of well-established credit reporting industry standards.

93. Plaintiff alleges that Defendant Universal did not review well established industry standards for credit reporting.

94. If Defendant Universal had reviewed such standards, Defendant Universal would have seen that their reporting was not in compliance and consequentially inaccurate or incomplete.

95. The lack of investigation is unreasonable.

**Willfulness**

96. In addition Plaintiff alleges that the inaccuracies were a result of reckless policies and procedures in place by Defendant when reviewing disputes. Specifically, Universal does not properly train its employees with respect to investigations.

97. These employees are given very little training and are expected to spend less than five minutes, reviewing, investigating, and responding to disputes. Thus where the FCRA requires a reasonable investigation Universal does not actual conduct an investigation.

98. Such a system is inherently reckless and no doubt resulted in the inaccuracies contained herein.

**Inaccuracy**

99. Defendant Verizon was reporting Plaintiff's account, beginning in 67304xxxx, inaccurately.

100. Defendant reported a charge off and indicated the account was in collections.

101. In addition after receiving Plaintiff's dispute that specifically referenced a bankruptcy discharge Defendant Verizon also inserted a balance and a past-due balance in the amount of $4,194.00!

102. Defendant Verizon's reporting does not report that the account was included or discharged in Plaintiff's chapter 7 bankruptcy.

103. Defendant Verizon's charge off reporting continued after Plaintiff received his chapter 7 discharge.

104. Plaintiff's account with Verizon even if charged off should still reflect the bankruptcy discharge. Verizon therefore did not report the CII "E."

105. Plaintiff does not owe Verizon $4,194.00 nor is Plaintiff currently past due in the same amount given that the legal status of the debt changed upon discharge.

106. Defendant reporting a charge off is entirely incomplete and misleading given Plaintiff's bankruptcy discharge.

107. Plaintiff alleges that Defendant Verizon did not investigate whether Plaintiff filed for bankruptcy or whether Plaintiff's account was included in the bankruptcy.

108. The Credit Reporting Agencies provided notice to Defendant Verizon that Plaintiff was disputing the inaccurate and misleading information, but Defendant Verizon failed to conduct a reasonable investigation of the information, as required by the Fair Credit Reporting Act.

109. Defendant Verizon's reporting appears to undermine Plaintiff's bankruptcy discharge as Verizon has taken the approach that it is ok to continue reporting the account as in collections and charged off, post discharge .

110. Based on Plaintiff's dispute, Defendant Verizon should have known that its account was included in Plaintiff's bankruptcy given that it arose prepetition.

111.  The most basic investigation would include a simple review of well-established credit reporting industry standards.

112. Plaintiff alleges that Defendant Verizon did not review well established industry standards for credit reporting.

113. If Defendant Verizon had reviewed such standards, Defendant Verizon would have seen that their reporting was not in compliance and consequentially inaccurate or incomplete.

114. The lack of investigation is unreasonable.

**Willfulness**

115. In addition Plaintiff alleges that the inaccuracies were a result of reckless policies and procedures in place by Defendant when reviewing disputes.

116. Verizon does not properly train its employees with respect to investigations.

117. These employees are given very little training and are expected to spend less than five minutes, reviewing, investigating, and responding to disputes. Thus where the FCRA requires a reasonable investigation Universal does not actual conduct an investigation.

118. Such a system is inherently reckless and no doubt resulted in the inaccuracies contained herein.

**Inaccuracy**

119. Defendant Credit One was reporting Plaintiff's account, beginning in 4447xxxx, inaccurately.

120. Defendant reported a charge off and indicated the account was in collections.

121. Defendant Credit One's reporting does not report that the account was included or discharged in Plaintiff's chapter 7 bankruptcy.

122. Defendant Credit One's charge off reporting continued after Plaintiff received his chapter 7 discharge.

123. Plaintiff's account with Credit One even if charged off should still reflect the discharge.

124. Defendant reporting a charge off is entirely incomplete and misleading because Plaintiff has discharged the debt.

125. Defendant Credit One is therefore not reporting the CII E

126. Plaintiff alleges that Defendant Credit One did not investigate whether Plaintiff filed for bankruptcy or whether Plaintiff's account was included in the bankruptcy.

127. The Credit Reporting Agencies provided notice to Defendant Credit One that Plaintiff was disputing the inaccurate and misleading information, but Defendant Credit One failed to conduct a reasonable investigation of the information, as required by the Fair Credit Reporting Act.

128. Defendant Credit One's reporting appears to undermine Plaintiff's bankruptcy discharge as Credit One has taken the approach that it is ok to continue reporting the account as in collections and charged off, post discharge making it appear that this debt may still exist in a collectable state. .

129. Based on Plaintiff's dispute, Defendant Credit One should have known that its account was included in Plaintiff's bankruptcy given that it arose prepetition.

130.  The most basic investigation would include a simple review of well-established credit reporting industry standards.

131. Plaintiff alleges that Defendant Credit One did not review well established industry standards for credit reporting.

132. If Defendant Credit One had reviewed such standards, Defendant Credit One would have seen that their reporting was not in compliance and consequentially inaccurate or incomplete.

133. The lack of investigation is unreasonable.

### Willfulness

134. In addition Plaintiff alleges that the inaccuracies were a result of reckless policies and procedures in place by Defendant when reviewing disputes.

135. Credit One does not properly train its employees with respect to investigations.

136. These employees are given very little training and are expected to spend less than five minutes, reviewing, investigating, and responding to disputes.

137. Where the FCRA requires a reasonable investigation Universal does not actual conduct an investigation.

138. Such a system is inherently reckless and no doubt resulted in the inaccuracies contained herein.

### Damages

139. Plaintiff pulled the credit report at issue after the dispute process expired at a cost of $39.95, specifically for the sole purpose of verifying that the inaccuracies were fixed.

140. As a result of the incorrect reporting, Plaintiff has suffered economic loss, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code and the power of this Court to preserve and perpetuate a fresh start

141. The actions of Experian, Equifax, Verizon, Credit One, and Universal as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

142. The actions of Universal, Verizon, and Credit One as alleged herein are acts in violation of the Consumer Credit Reporting Agencies Act California Civil Code § 1785.25(a).

## FIRST CAUSE OF ACTION

(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. and Equifax, Inc. – Failure to Assure Credit Reporting Accuracy.**

143. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

144. Equifax, Inc. and Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

145. As a result of Equifax, Inc. and Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

146. The violations by Equifax, Inc. and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

### Willfulness

147. Equifax and Experian's actions were willful and or reckless given as a policy Equifax simply parrots whatever information is provided by a data furnisher rather than doing even a cursory investigation.

148. In addition Equifax and Experian intentionally hires employees who do NOT live within the intercontinental United States to investigate consumer disputes.

149. Equifax and Experian hires these employees to specifically undermine and frustrate a consumer's ability to confront the individual specifically responsible for inaccurate reporting.

150. Equifax and Experian provides little to no training to these individual employees and expects these employees to conduct over 90 investigations per day. Such policy allows less than five minutes to review, investigate, and respond to a consumer's dispute.

151. Such policy is inherently reckless and no doubt leads to inaccuracies

152. In the alternative, Equifax, Inc.  and Experian were negligent, as they failed to do even the most basic investigation, which would have uncovered the inaccuracies at issue, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

153. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants and Does 1-100)

**Universal Acceptance Corp, Verizon Wireless, Credit One Bank, N.A. –Failure to Reinvestigate.**

154. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

155. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

156. Defendant Universal, Verizon, and Credit One violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

157. Equifax, Inc. and Experian provided notice to Universal, Credit One, and Verizon that Plaintiff was disputing the inaccurate and misleading information but Universal failed to conduct a reasonable investigation of the information as required by the FCRA.

158. Based on Plaintiff's dispute, Universal, Credit One, and Verizon should have known their accounts were included in Plaintiff's Chapter 7 bankruptcy.

159. \The most basic investigation would include a simple review of well-established credit reporting industry standards.

160. Plaintiff alleges Universal, Verizon, and Credit ONe did not review well established industry standards for credit reporting.

161. If Universal, Verizon, and Credit One had reviewed such standards Defendants would have seen their reporting was not in compliance and consequently inaccurate and or incomplete.

162. Such an investigation would be unreasonable.

163. Plaintiff also alleges that Universal, Verizon, and Credit One did not investigate whether Plaintiff filed for bankruptcy, whether their accounts were included.

164. The lack of investigation is unreasonable.

**Willfulness**

165. Plaintiff further alleges that Universal, Verizon, and Credit One have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

166. These individuals routinely do nt investigate disputes but instead simply respond that the information being reported is accurate.

167. Such policies are inherently reckless and make inaccuracies inevitable.

**Experian Information Solutions, Inc. and Equifax, Inc. – Failure to Reinvestigate Disputed Information.**

168. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

169. After Plaintiff disputed the accounts mentioned above, Experian and Equifax, Inc. were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

170. Equifax, Inc. and Experian failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

171. Equifax, Inc. and Experian are not a passive entity bound to report whatever information a DF provides.

172. Plaintiff alleges that Experian and Equifax, Inc. is readily familiar with Metro 2 guidelines and credit reporting industry standards.

173. Equifax, Inc. and Experian sponsors and authorizes workshops hosted by the CDIA that teach the following to DFs:

    a.   Do not report delinquencies post discharge.

    b.   Do not report delinquencies post petition pre discharge in the payment history section regardless of Chapter 7 or Chapter 13. Instead report the Metro 2 indicator D.

    c.   Update the CII to E post discharge in Chapter 7

d.   In Chapter 7 cases do not report past due balances post discharge.

e.   In Chapter 7 cases do not report balances that are inconsistent.

f.   In Chapter 7 cases do not report monthly payments that are inconsistent.

g.   The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.

174. Given the aforementioned, Plaintiff alleges that Experian and Equifax, Inc. can and does suppress inaccurate information from being reported when DFs provide inaccurate information.

175. Equifax, Inc. and Experian can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

176. Equifax, Inc. and Experian failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

177. Equifax, Inc. and Experian would have known that Plaintiff filed for Chapter 7 based on multiple other accounts reporting as much.

178. Equifax, Inc. and Experian would have known that Plaintiff's bankruptcy had been discharged based on multiple other accounts reporting as much.

179. Equifax, Inc. and Experian would have known that no delinquencies should be reported post discharge.

180. Equifax, Inc. and Experian therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. and Equifax, Inc. – Failure to Review and Consider All Relevant Information.**

181. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

182. Equifax, Inc. and Experian violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

183. As a result of Equifax, Inc. and Experian's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

184. The violations by Equifax, Inc. and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian and Equifax, Inc. were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

185. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants and Does 1-100)

**Experian Information Solutions, Inc. and Equifax, Inc. – Failure to Delete Disputed and Inaccurate Information.**

186. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

187. Equifax, Inc. and Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the dispute inaccurate items of information from Plaintiff's credit file or  modify the item of information upon a lawful reinvestigation.

188. As a result of Equifax, Inc. and Experian's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

189. The violations by Equifax, Inc. and Experian were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian and Equifax, Inc. were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

190. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Equifax, Inc. and Experian in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FIFTH CAUSE OF ACTION

(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants and Does 1-100)

**Universal Acceptance Corp, Verizon, and Credit One – Reporting Inaccurate Information to CRAs.**

191.  Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

192.  In the regular course of its business operations, Universal, Verizon, and Credit One routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

193.  Universal, Verizon, and Credit One intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards.

194.  Plaintiff alleges that Universal Acceptance Corp, Verizon, and Credit One re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

195.  Plaintiff also alleges that Universal, Verizon, and Credit One had reason to know that the information reported on Plaintiff's accounts were misleading, inaccurate, incomplete, and did not follow well-established credit reporting industry standards.

196.  Plaintiff alleges that Universal, Credit One, and Verizon had reason to know that by not comporting with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

197.  Plaintiff alleges that the bankruptcy notices, disputes letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to Universal, Credit One, and Verizon of its misleading and inaccurate reporting as well as being noticed of the plan confirmation and proof of claim forms sent by the U.S. Bankruptcy Court.

198.  Universal, Verizon, and Credit One all failed to notify Equifax, Inc. and Experian that the information Defendant Universal, Verizon, and Credit One re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

199. Universal, Verizon, and Credit One's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

200. As a direct and proximate result of Verizon, Credit One, and Universal's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to inability to properly reorganize under Chapter 7, reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

4. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

5. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Dated: July 19, 2017

**SAGARIA LAW, P.C.**
*/s/ Elliot Gale, Esq.*
Scott Sagaria, Esq.
Elliot Gale, Esq.
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.


Dated: July 19, 2017                          **SAGARIA LAW, P.C.**
                                              _/s/ Elliot Gale, Esq._
                                              Scott Sagaria, Esq.
                                              Elliot Gale, Esq.
                                              Attorneys for Plaintiff